IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action: 1:13-cv-147

| | |
|---|---|
| WHITNEY C. STEPHENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) COMPLAINT |
| v. | ) |
| | ) |
| PFIZER INC., | ) |
| | ) |
| Defendant. | ) |

The plaintiff, Whitney C. Stephenson, complaining of defendant, alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff has instituted this action pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, *et seq.*, *as amended*, to recover damages for the violation of her civil rights. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1331.

2. Plaintiff resides in, the acts described herein occurred within, and defendant transacts business in the Middle District of North Carolina. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

3. The plaintiff, Whitney C. Stephenson, is a resident of Forsyth County, North Carolina. At all times pertinent to this action, the plaintiff was an "employee" of defendant within the meaning and definition of the ADA, 42 U.S.C. § 12111(4).

4. The defendant, Pfizer Inc. ("Pfizer" or "defendant") is a corporation established pursuant to the laws of the State of Delaware. Defendant is a pharmaceutical manufacturer and sales company which is engaged in business in Forsyth County, North Carolina. At all times pertinent to this action, defendant employed over 500 employees, and was the "employer" of plaintiff within the meaning and definition of the ADA, 42 U.S.C. § 12111(5)(A).

## FACTS

### Background

5. Plaintiff was initially employed by defendant's predecessor, Parke-Davis, in 1984. Since her initial employment, plaintiff has served as a pharmaceutical sales representative in the territory surrounding Winston-Salem, North Carolina. In that position, for 28 years, plaintiff sold defendant's products to doctors and other healthcare professionals in the area.

## Plaintiff's Position

6. Plaintiff's position as a pharmaceutical sales representative required her to travel to doctor's offices and medical facilities within the territory of Winston-Salem, to meet with doctors, and educate them concerning defendant's products.

7. Specifically, plaintiff's job description in 2011 required that she:

- "[p]romote sales in assigned accounts with assigned physician targets;"

- be "charged with sales efforts and relationship development with physician targets and Key Opinions Leaders;"

- "build lasting relationships with priority doctors;"

- "possess in-depth expertise in, or demonstrated ability to learn current promotional therapeutic areas, demonstrate strong selling skills, broad knowledge of payer dynamics, competitors and associated disease states;"

- develop "superior selling, technical and relationship building skills;"

- "[a]ssess needs of target physicians" and "[a]ddress needs with responsive approach, targeted skills and appropriate resources;"

- have "[e]xceptional aptitude for learning and ability to communicate technical and scientific product and disease management information to a wide range of customers;"

- have "[d]emonstrated high degree of business acumen;" and

3

- have "proficiency using sales data/call reporting software/applications."

8. Plaintiff developed and demonstrated with excellence each of the above skills and qualifications over the years.

9. Plaintiff's ability to research and articulate the attributes of the drugs and to build rapport and trust with defendant's clients was exceptional and resulted in significant sales of Pfizer's products.

10. Driving was not included in plaintiff's job description, and was not an essential function of her job.

11. Over the years, plaintiff was commended repeatedly for her commitment and performance. Specifically, plaintiff was inducted as a Pfizer Master in 2004, won eight Winner's Circles awards, and was named to the Pfizer Hall of Fame.

**Plaintiff's Disability**

12. In or about 2008, plaintiff was diagnosed with a serious and permanent eye disorder, known as Non-Arteritic Anterior Ischemic Optic Neuropathy (NAION).

13. As a result of her disorder, in 2008, plaintiff lost over 60% vision in her left eye. Plaintiff was able to adapt to the loss of vision in one eye, and continue to perform her job duties with Pfizer without accommodation.

14. Plaintiff also continued to perform the normal functions of her personal life.

15. In early October, 2011, plaintiff realized that her disease was affecting her right eye.

16. On October 8, 2011, plaintiff was hospitalized by her ophthalmologist in an attempt to prevent further visual deterioration. The physician's therapy was ultimately unsuccessful. Within the next several weeks, the vision in plaintiff's right eye diminished significantly.

17. As a result of her disorder, plaintiff lost over 60% vision in her right eye.

18. Following her hospitalization, in late October, 2011, plaintiff's physician advised her that as a result of her severe limitations of vision, she could no longer operate a motor vehicle.

19. Plaintiff informed her manager of her condition, and requested the reasonable accommodation of transportation to enable her to travel to see clients and customers, and continue in her position.

20. With reasonable accommodations, plaintiff is able to perform all of the essential functions of her position with Pfizer.

21. Specifically, plaintiff's disability does not restrict her ability to be transported to the locations of defendant's clients; does not impair her cognitive

5

Case 1:13-cv-00147-TDS-LPA   Document 1   Filed 02/20/13   Page 5 of 13

functioning, memory, or ability to learn; does not diminish her previously-established superior sales ability or business acumen; and does not prevent her from making calls or using software so long as she has access to magnification equipment when reading text.

22. At that time of her request for accommodations, defendant advised plaintiff to apply for short-term disability (STD), and to remain out of work on a leave of absence under the Family and Medical Leave Act, 29 USC § 2601, *et seq*., while the company considered her request.

23. Defendant immediately refused to consider reasonable accommodations to enable plaintiff to resume her work.

24. Since plaintiff was unable to work without reasonable accommodations for her disability, she applied and was approved for STD, starting on November 8, 2011.

### The Interactive Process

25. Defendant has a duty to engage in the interactive process to determine, with plaintiff's input, what accommodations could reasonably accommodate her disability and enable plaintiff to resume her work.

26. As alleged above, plaintiff initially requested that defendant provide her with the reasonable accommodation of transportation so that she could make her calls on doctors to sell defendant's products.

27. From November, 2011, to April, 2012, plaintiff maintained frequent communication with defendant, attempting to engage in an interactive process with defendant regarding her return to work, as required by the ADA. Specifically, by way of example:

   a. On November 9, 2011, plaintiff wrote to her manager, requesting the reasonable accommodation of transportation, and provided specific information concerning drivers who could be hired to transport plaintiff from site to site, at a reasonably low rate, relative to the substantial amounts plaintiff earned for defendant.

   b. On November 18, 2011, plaintiff wrote to her manager, providing the guidelines of the EEOC explaining that under the ADA driving is not an essential function of the job of a pharmaceutical salesperson; and that although traveling may be an essential function of plaintiff's job, plaintiff has no restrictions on her ability to travel.

   c. On December 9, 2011, plaintiff, in response to an e-mail she had received from her Human Resources (HR) representative at the time, asked for an explanation of his rejection of her requested reasonable accommodation of transportation, while emphasizing her willingness to consider reassignment or other reasonable accommodations that would enable her to resume her career.

7

Case 1:13-cv-00147-TDS-LPA   Document 1   Filed 02/20/13   Page 7 of 13

d. On January 18, 2012, at the suggestion of one of defendant's managers, plaintiff submitted three potential job descriptions for alternative positions for which plaintiff would be exceptionally well-qualified, which could benefit the company, and to which plaintiff could be reassigned.

28. Initially, Pfizer informed plaintiff that it would provide magnified computer equipment, but refused to accommodate the non-essential function of travel by providing transportation to enable plaintiff to return to her position.

29. In response to plaintiff's request to have her disability accommodated through the provision of a contract driver, defendant represented that the issue was not "costs," but nevertheless rejected plaintiff's request.

30. Defendant has not claimed, nor can it claim, any undue hardship in providing reasonable accommodations to enable plaintiff to resume her job.

31. During the time pertinent to this action, defendant has provided each of its pharmaceuticals sales representatives with a leased vehicle which is replaced approximately every three to four years based on mileage. Furthermore, defendant has paid for all gas, repairs, and maintenance on the vehicles that it furnishes to its pharmaceuticals sales representatives. Defendant has charged the pharmaceutical sales representatives a low monthly cost for personal use of the vehicle.

8

Case 1:13-cv-00147-TDS-LPA Document 1 Filed 02/20/13 Page 8 of 13

32. Alternatively, during the time pertinent to this action, defendant has permitted its pharmaceutical sales representatives to purchase their own vehicles, within guidelines set by defendant, rather than using the leased vehicles provided by defendant. Pharmaceutical sales representatives who purchase their own vehicles are reimbursed by defendant for most or all of the costs of the vehicle, depending on the guidelines of the reimbursement program and the vehicle chosen by the pharmaceutical sales representative.

33. Upon information and belief, defendant provides drivers and transportation for other employees who are required to travel in their work.

34. Defendant also refused to reasonably accommodate plaintiff's disability by reassigning her to another position.

35. Defendant was unwilling and did not make a good faith effort to engage in the interactive process with plaintiff to discuss reasonable accommodation of plaintiff's disability.

36. As a result of defendant's refusal to provide reasonable accommodations to permit and enable plaintiff to return to her position, or to consider plaintiff's reassignment to a comparable position, plaintiff applied and was approved for long term disability compensation under Pfizer's employee benefit plan on the stated ground that she was unable to work in her regular position because defendant had denied her reasonable accommodations.

## ADMINISTRATIVE REMEDIES

37. On or about April 25, 2012, plaintiff filed her Charge of Disability Discrimination with the Equal Employment Opportunity Commission (EEOC) in Greensboro, North Carolina. Plaintiff's charge alleged disability discrimination in the failure of defendant to engage in an interactive process on a good faith basis to determine reasonable accommodations to enable plaintiff to resume her work, and in its ultimate failure to provide reasonable accommodation to plaintiff.

38. On November 26, 2012, EEOC issued notice of plaintiff's right to sue with respect to her charge against the defendant.

39. Plaintiff has complied with all procedural prerequisites to filing this claim.

## CLAIM FOR RELIEF
### Disability Discrimination in Violation of the ADA

40. Plaintiff incorporates the foregoing paragraphs as if fully set out herein.

41. The ADA requires that a qualified individual with a disability be reasonably accommodated to enable her to perform the essential functions of her job in the absence of proof of some undue hardship.

10

42. Plaintiff is a qualified individual with a disability since she suffers from a physical disorder that "substantially limits … major life activities of … seeing." 42 USC § 12102 (1)-(2).

43. Plaintiff is able to perform the essential functions of her job as a sales representative for defendant as long as she is reasonably accommodated with the provision of special magnified equipment and a method of transportation between sales sites.

44. Defendant wrongfully and intentionally discriminated against plaintiff because of her disability in violation of the ADA as follows:

    a. In failing to engage in a good-faith, reasonable, interactive process to determine reasonable accommodations to enable plaintiff to return to work;

    b. In failing to consider reassignment of plaintiff to a comparable position; and

    c. In denying plaintiff reasonable accommodations which would have enabled her to return to work in her position as a sales representative.

45. As a proximate result of defendant's illegal acts of disability discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and

11

emotional distress; loss of professional reputation and quality of life; and other damages to be proven at trial.

46. Plaintiff is entitled to appropriate relief pursuant to the ADA, including compensatory damages and reasonable attorneys' fees and costs for her representation herein pursuant to 42 U.S.C. § 12117(a).

47. Defendant engaged in disability discrimination against the plaintiff with reckless indifference to her federally protected rights. Accordingly, plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(b).

**PRAYER FOR RELIEF**

The plaintiff hereby requests the following relief:

(1) That plaintiff be reinstated to her position with defendant, with reasonable accommodations;

(2) That plaintiff recover of defendant back pay and restoration of all benefits;

(3) That plaintiff recover of defendant compensatory damages in an amount in excess of $100,000;

(4) That plaintiff recover of defendant punitive damages in an amount to be determined by the jury;

(5) That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein as required in 42 U.S.C. §12117(a);

(6) That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

(7) That this Court grant such other relief as it deems just and appropriate.

**Request for Jury Trial**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This the 20th day of February, 2013.

/s/<u>Robert M. Elliot</u>
Robert M. Elliot (7709)
Alison L. Maddux (39877)
Attorneys for Plaintiff
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
(336) 724-2828

13