IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WHITNEY C. STEPHENSON,           )
                                 )
            Plaintiff,           )
                                 )
      v.                         )         1:13cv147
                                 )
PFIZER INC.,                     )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is Defendant's motion for summary judgment, which raises two issues under the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq. ("ADA"): whether driving is an "essential function" of Plaintiff's job as a sales representative and, because Plaintiff is legally blind, whether her employer has a duty to provide a driver or transportation for her as an accommodation.  (Doc. 24.)  For the reasons set forth below, the court finds that driving is an essential function of Plaintiff's job and that the accommodations requested need not be provided.  Therefore, Defendant's motion for summary judgment will be granted and the case dismissed.

## I.    BACKGROUND

The undisputed facts, viewed in the light most favorable to Plaintiff Whitney Stephenson ("Stephenson"), as the non-moving

party, are as follows:[1]

Stephenson has worked for Pfizer, or its predecessor, since 1984. (Doc. 36-1 ¶ 5.) Specifically, she has been a pharmaceutical sales representative, sharing information about Pfizer's pharmaceutical products with medical professionals. (Id. ¶¶ 6-7.) By all accounts, she was very successful. (Id. ¶¶ 8-10.)

In October 2008, Stephenson developed a serious disorder in her left eye and was diagnosed with non-arteritic ischemic optic neuropathy, due to a lack of blood flow to her optic nerve. (Id. ¶ 16.) She lost significant vision in that eye but was able to continue working at Pfizer without accommodation. (Id.)

In October 2011, however, Stephenson developed problems with her vision in her right eye. (Id. ¶ 14.) She was diagnosed with the same condition in that eye and, following unsuccessful treatment, her vision significantly deteriorated to the point that it became unsafe and no longer possible for her to drive. (Id. ¶¶ 15-18, 26.) The decline stabilized, but the damage is irreversible. (Id. ¶ 16.) Unable to drive, Stephenson filed for disability benefits with Pfizer and sought

---

[1] Throughout her briefing, Stephenson fails to provide any pinpoint citation to a particular page or paragraph, providing instead only cites to whole documents generally. This practice violates Local Rule 7.2(a)(2), substantially burdens the court with the obligation of investigating the basis of claimed facts – a task the court need not do, and renders a party's position subject to rejection on this basis alone. See Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014).

an accommodation through Pfizer's human resources department. (Id. ¶¶ 19, 26.)

Stephenson's job required her to meet with physicians in person to sell Pfizer products. (Doc. 25-2 at 52.) She typically met with approximately eight to ten physicians per day, covering a large territory in Forsyth County and nearby cities in other counties. (Id. at 44, 52.) Because she spent up to 90% of her time traveling, Pfizer did not provide her with an office but with a company car. (Id. at 53–55.) Stephenson could not rely on public transportation to do her job, and she does not believe she can presently do her job without some form of arranged transportation. (Id. at 56–57, 92, 187–88.) Stephenson, like all of Pfizer's North Carolina sales representatives, had always performed her job by driving herself between doctors' offices. (Id. at 55.)

After Stephenson's vision declined, she requested accommodations from Pfizer for her disability in the form of magnifying glasses for reading and special software for her computer, both of which Pfizer granted. (Doc. 25-3 at 5; Doc. 25-8 at 2.) Stephenson also requested that Pfizer employ a third-party driver to transport her to physicians' offices. (Doc. 25-3 at 5; 25-4 at 3.) The driver would assist Stephenson on a permanent, full-time basis. (Doc. 25-2 at 95-96.) Pfizer rejected this accommodation as unreasonable. (Doc. 25-8 at 2.)

Communication between Stephenson and Pfizer representatives continued, with Stephenson continuing to seek a driver as an accommodation and Pfizer continuing to reject the proposal. Pfizer recommended that Stephenson apply for various other positions within the company, including a telecommuting position that would not require her to drive or leave her home. (Doc. 25-11 at 2; Doc. 25-2 at 119-21.) In addition, Pfizer invited Stephenson to apply for any of the company's internal job postings; at any given time "hundreds" of such vacant positions exist. (Doc. 25-6 at 27.) Stephenson decided not to apply for any open positions because she thought they required her to accept a substantial decrease in salary and were not commensurate with her level of skill and experience. (Doc. 25-2 at 124, 127-28, 136-37; Doc. 36-1 at ¶¶ 48-49.) Instead, either on her own or at the prompting of a supervisor, she proposed two possible accommodations in the form of new positions within Pfizer that did not yet exist (a trainer and a "key contacts" representative). (Doc. 25-2 at 130-32.) Pfizer determined that there was insufficient business to create either of these proposed jobs. (Doc. 25-6 at 58-60.) Stephenson also emailed the Chief Executive Officer of Pfizer under the company's open door policy to report her disagreement with the company's decision not to hire a driver for her. (Doc. 25-2 at 148-52; 25-14.) The company stood by its decision. Following a period

4

of short-term disability coverage, Pfizer ultimately placed Stephenson on long-term disability with 60% of her pay and has not terminated her. (Doc. 25-2 at 175–78.)

Stephenson filed the present complaint alleging one cause of action - disability discrimination under the ADA. In her complaint, Stephenson alleges that Pfizer discriminated against her because of her disability by failing to engage in a good-faith, interactive process to reach a reasonable accommodation; by failing to consider reassignment to a comparable position; and by denying her proposed accommodations. (Compl. ¶ 44.)

After discovery, Pfizer filed the present motion for summary judgment. (Doc. 24.) With Stephenson's response (Doc. 35) and Pfizer's reply (Doc. 45), the motion is ripe for consideration.

## II. ANALYSIS

### A. Standard of Review

A court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine dispute of material fact remains. Where, as here, the non-moving party has the burden of proof, the moving party is entitled to summary judgment if it demonstrates that the non-moving party's evidence is

insufficient to establish an essential element of her claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 325 (1986). For the purposes of this motion, the court regards Stephenson's statements as true and draws all inferences in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But she must establish more than the "mere existence of a scintilla of evidence" to support her position. Id. at 252. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Ultimately, summary judgment is appropriate where the non-movant fails to offer evidence on which the jury could reasonably find for her. Id. at 252.

      **B. ADA**

    Under the ADA, it is unlawful for an employer to discriminate against a disabled employee who qualifies for protection under the Act. Unlawful discrimination against qualifying, disabled employees includes an employer's failure to make "reasonable accommodations" of known disabilities, except where the employer can show that the accommodation "would impose an undue hardship" on the employer's business operations. 42 U.S.C. § 12112(b)(5)(A).

    To state a prima facie case against an employer for failure to accommodate a disability under the ADA, an employee must establish four elements: (1) the employee was an individual

with a disability within the meaning of the statute; (2) the employer had notice of the employee's disability; (3) the employee could perform the essential functions of his or her job with reasonable accommodation; and (4) the employer refused to make such accommodations. <u>Wilson v. Dollar Gen. Corp.</u>, 717 F.3d 337, 345 (4th Cir. 2013). There is no dispute in this case that Stephenson's blindness is a qualifying disability under the Act and that Pfizer knew of it. Rather, the parties differ on whether (1) Stephenson could "'perform the essential functions of the job, <u>i.e.</u>, functions that bear more than a marginal relationship to the job at issue,' and (2) if not, whether 'any reasonable accommodation by the employer would enable [her] to perform those functions.'" <u>Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.</u>, 31 F.3d 209, 213 (4th Cir. 1994) (quoting <u>Chandler v. City of Dallas</u>, 2 F.3d 1385, 1393-94 (5th Cir. 1993)).

An employee bears the initial burden of establishing that he or she could perform the essential duties of the position with reasonable accommodation. <u>Id.</u> This burden is satisfied when the employee points to an accommodation that "seems reasonable on its face, <u>i.e.</u>, ordinarily or in the run of cases." <u>U.S. Airways, Inc. v. Barnett</u>, 535 U.S. 391, 401 (2002). Having made this showing, the burden shifts to the employer to show that the particular accommodation would impose

an undue hardship in the particular, "case-specific" circumstances.  Id.

### 1.  Essential functions of Stephenson's position

The facts on this issue are not in dispute; the parties merely dispute how to characterize the evidence.  The parties dispute whether driving is an essential function of Stephenson's position as a pharmaceutical sales representative.  Stephenson argues that "traveling" is an essential function of her position but that driving, as merely one "mode of travel," is a marginal job duty.  (Doc. 40 at 11-12.)  Pfizer rejects the "travel versus driving" distinction, arguing that "traveling by motor vehicle" is essential to Stephenson's position.  (Doc. 45 at 7-8.)  Whether employees may perform the essential functions of their jobs is an issue appropriate for summary judgment where the evidence is undisputed.  See Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997).

The Fourth Circuit has defined "essential functions of a job" as "functions that bear more than a marginal relationship to the job at issue."  Tyndall, 31 F.3d at 213 (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir.1993)).  This definition accords with the general definition from the regulations:  "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires.  The term 'essential

8

functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1) (2014). The regulations offer a non-exhaustive list of evidence relevant to determining whether a job function is essential:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

Id. § 1630.2(n)(3)(i)-(vii).

The uncontroverted evidence shows that these factors strongly favor Pfizer. Stephenson does not dispute the first factor, that Pfizer considers driving essential to her job. Pfizer's employees clearly testified that driving is essential. (See, e.g., Doc. 25-5 at 79–80; Doc. 25-6 at 53.) Stephenson also testified that Pfizer had provided her with a company car to perform her job, which corroborates such statements. (Doc. 25-2 at 55.)

There appears to be a genuine dispute as to whether Pfizer's posted job descriptions for sales representative positions explicitly require a job candidate to be able to drive. (<u>See</u> Doc. 40 at 10 & n.3; Doc. 25 at 13.) Some of Pfizer's current job postings for new sales representatives and other internal descriptions of the position explicitly require a valid driver's license. (Doc. 36-1 at 29 ("Applicant must have a valid US driver's license and a driving record in compliance with company standards."); Doc. 25-17 at 2 ("Must be able to safely operate a motor vehicle in accordance with company policy and applicable driving rules and regulations.").) Yet other current job postings for new sales representatives are silent on the ability to drive. (<u>See</u> Doc. 36-1.) But as the Fourth Circuit has noted, the absence of a purported essential function from a posted job description is not dispositive. <u>See</u> <u>Rohan v. Networks Presentations LLC</u>, 375 F.3d 266, 279 n.22 (4th Cir. 2004).

The third, fourth, and seventh factors weigh heavily in favor of Pfizer. Stephenson conceded in her deposition that the "bulk" of her time each day is spent traveling between doctors' offices, so much so that she does not even have an office within Pfizer. (Doc. 25-2 at 53-54.) It is also undisputed that Stephenson cannot perform her job unless a driver or other transportation is arranged for her. (<u>Id.</u> at 92, 187-88.) There

is also no dispute that all other Pfizer sales representatives in North Carolina perform their jobs by driving themselves between doctors' offices — and so, too, had Stephenson before her disability arose.  (Id. at 55.)

Considering the complete record, the court concludes that driving is an essential part of the job of a Pfizer sales representative in Stephenson's territory.  This conclusion is in harmony with the judgments of other federal courts finding driving to be an essential function of sales representatives.  See, e.g., Mathews v. Trilogy Commc'ns, Inc., 143 F.3d 1160, 1165 (8th Cir. 1998) (holding that a sales representative who could not get driver's insurance could not drive and thus could not perform an essential function of his job); Walsh v. AT&T Corp., 2007 U.S. Dist. LEXIS 50051, at *18–19 (N.D. Ohio July 11, 2007) (driving to meet with clients was essential function of sales representative); Kielbasa v. Illinois E.P.A., No. 02-C-4233, 2005 WL 2978717, at *7 (N.D. Ill. Nov. 3, 2005) ("In short, although driving is not the purpose of the [sales representative] position, the record leaves no doubt that the job cannot be done without driving. As such, driving is essential."); Durning v. Duffens Optical, 1996 U.S. Dist. LEXIS 1685, at *19 (E.D. La. Feb. 14, 1996) ("Durning's inability to drive long distances and, as a consequence, to make in-person sales calls to remote customers is uncontroverted.  Accordingly,

the Court finds that he could not perform that essential function of his position.").

Stephenson, however, urges this court to define the essential functions of her job more broadly, finding that "traveling" is essential to her job, but that driving, as the particular method of travel, is not. (Doc. 40 at 11-12.) Other courts have considered this precise distinction in the sales representative context. In Kielbasa, the plaintiff was a sales representative whose vision deteriorated to the point that he became "irreparably, legally blind." 2005 WL 2978717, at *2. The employer's description of the sales representative position stated that 20% of the position was driving. Id. The plaintiff argued that driving was not an essential function of his job, but rather that traveling between clients' offices was the more appropriate way to describe his duties. Id. at *7. The court disagreed, however, noting that the sales representative job "cannot be done without driving. As such, driving is essential." Id.[2] The court went on to explain the consequences of a different conclusion:

> To hold otherwise would expand greatly the scope of
> the ADA and the Rehabilitation Act. If the court were

---

[2] This rule demonstrates why this case is not analogous to Keith v. Cnty. of Oakland, 703 F.3d 918 (6th Cir. 2013), cited by Stephenson. In Keith, the court found that the job of a lifeguard could be performed without the ability to hear. Id. at 926-27. But in this case, as in Kielbasa, Stephenson cannot show how she can perform her sales representative job without the ability to drive and without shifting a burden onto Pfizer that the ADA does not permit.

> to find that driving is a marginal function of a
> [sales representative position], then it would, for
> instance, necessarily have to find that driving is a
> marginal function of the vast array of sales positions
> in which employees are chiefly responsible for selling
> a given product but must spend considerable time in a
> car to do so. The court does not believe, and [the
> plaintiff] has cited no authority to suggest, that
> Congress ever intended such a result.

Id. at *8. Moreover, even if the court were to accept Stephenson's argument that traveling and selling Pfizer products are essential functions of her position, it would not preclude a finding that driving is an additional, essential function. See Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 78 (1st Cir. 2010) ("The essential functions of a position are not limited to the 'primary' function of the position.").

The cases cited by Stephenson are not analogous to this case. In Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208 (2d Cir. 2001), the employee was denied a promotion as an assistant manager because her epilepsy prevented her from driving to a bank to deposit receipts, which was required for the position. Id. at 213. However, unlike this case, the employer never argued that driving was an essential function of the employee's job or that the job could only be performed by the employee driving herself to the bank. Id. at 217. Nor did the record show that driving involved a significant portion of an assistant manager's time.

Rorrer v. City of Stow, 743 F.3d 1025 (6th Cir. 2014), is likewise inapplicable here.  In Rorrer, the factors from 29 C.F.R. § 1630.2(n)(3) clearly favored a finding that driving is not an essential function of being a firefighter because other firefighters besides the plaintiff could drive without negative consequences for the city, as shown by the fact many firefighters never drove "as a matter of choice."  Id. at 1042. In contrast, the undisputed evidence in this case shows that other sales representatives could not drive for Stephenson while also performing their own jobs and that all other sales representatives drive themselves.  (Doc. 25-2 at 51–52, 55.)

There is no genuine dispute that driving bears more than a "marginal relationship" to Stephenson's sales representative job.  Tyndall, 31 F.3d at 213.  Therefore, for purposes of the ADA, driving is an essential function of Stephenson's job.

## 2. Reasonable accommodation of Stephenson's disability

Having found no genuine dispute that Stephenson could not perform an essential function of her job without an accommodation by Pfizer, the next issue is whether she can show that she could perform all of the essential functions of her job with a reasonable accommodation.  To make out her prima facie case, Stephenson must establish a possible accommodation that is "reasonable on its face, i.e., ordinarily or in the run of

cases." U.S. Airways, 535 U.S. at 401.

Here, the accommodations that Pfizer can be required to make under the ADA are not unlimited. Pfizer is "not required to reallocate essential functions," such as providing an assistant to perform some of the essential functions of a legally blind employee's job. 29 C.F.R. § 1630.2(o) app. Nor is Pfizer required to hire someone to do so. See Martinson, 104 F.3d at 687 ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position."); Hendrix v. AT&T, No. 3:09-CV-2174-CMC-PJG, 2011 WL 2192833, at *4 (D.S.C. June 6, 2011) ("Courts within this circuit have held that while temporary training or assistance for a disabled employee may be a reasonable accommodation, the ADA does not require an employer to permit an additional person permanently to perform an essential function of a disabled employee's position."). And while it is undisputed that Stephenson's vision loss precludes her from being able to legally operate a motor vehicle (Doc. 36-12 at 5), the court may not require Pfizer to exempt her from the essential function of driving. See Hill v. Se. Freight Lines, Inc., 877 F. Supp. 2d 375, 392 (M.D.N.C. 2012), aff'd, 523 F. App'x 213 (4th Cir. 2013). Consequently, the court finds that Stephenson's request that Pfizer provide a driver or

transportation for her as a sales representative is not reasonable in this case.

Ultimately, the only reasonable accommodation that Pfizer could make for Stephenson is reassignment to a different position within the company. If feasible, the reassigned position should be "an equivalent position in terms of pay, status, etc." 29 C.F.R. 1630.2(o) app. Pfizer's proposed accommodation need not have been Stephenson's preferred accommodation. Fink v. Richmond, 405 F. App'x 719, 723 (4th Cir. 2010). However, the court cannot require Pfizer to create a new position. Lamb v. Qualex, Inc., 33 F. App'x 49, 59 (4th Cir. 2002). The proposed position must also be vacant or set to become vacant within a reasonable amount of time, E.E.O.C. v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001); 29 C.F.R. § 1630.2(o) app., and be one for which Stephenson is qualified, 29 C.F.R. § 1630.2(o) app.

On a motion for summary judgment with a claim of failure to reassign under the ADA, the employee bears the burden of presenting evidence

> (1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation. If the employee meets his burden, the employer must demonstrate that transferring the employee would cause unreasonable hardship.

Donahue v. Consol. Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000).
At the least, the burden on an employee at the summary judgment
stage is to show that there was a comparable position within the
company to which she could have been reassigned. The Third
Circuit's holding accords with that of many sister circuits.
See, e.g., Kallail v. Alliant Energy Corporate Servs., Inc., 691
F.3d 925, 933 (8th Cir. 2012); Kotwica v. Rose Packing Co.,
Inc., 637 F.3d 744, 750 (7th Cir. 2011); Willard v. Potter, 264
F. App'x 485, 488 (6th Cir. 2008); Phelps v. Optima Health,
Inc., 251 F.3d 21, 27 (1st Cir. 2001); Jackan v. N.Y. State
Dep't of Labor, 205 F.3d 562, 567 (2d Cir. 2000); Taylor v.
Pepsi-Cola Co., 196 F.3d 1106, 1110-11 (10th Cir. 1999); Aka v.
Wash. Hosp. Ctr., 156 F.3d 1284, 1304 n.27 (D.C. Cir. 1998) (en
banc); Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d
1278, 1286 (11th Cir. 1997); see also Reyazuddin v. Montgomery
Cnty., Md., No. DKC 11-0951, 2014 WL 1153919, at *18 (D. Md.
Mar. 20, 2014). Placing such a burden on the employee at the
summary judgment stage is fair given the "liberal discovery
procedures of the Federal Rules of Civil Procedure." Jackan,
205 F.3d at 568 n.4.

Here, Stephenson has not met her burden. She argues in her
brief that "the evidence establishes at all times plaintiff was
open to reasonable accommodations which would permit her return
to her position or a comparable position at Pfizer." (Doc. 40

at 18-19.)[3]  However, this argument misunderstands her burden at this stage of the litigation.  In her complaint, Stephenson alleged that Pfizer "refused to reasonably accommodate [her] disability by reassigning her to another position."  (Compl. ¶ 34.)  Having completed discovery, Stephenson had the burden to substantiate this allegation by producing evidence that Pfizer had a vacant position at or below Stephenson's sales representative position for which she was qualified and could perform the essential functions with reasonable accommodation. Nowhere does Stephenson point to a vacant position with Pfizer that she was willing to accept.

Instead, the undisputed evidence shows that Pfizer invited Stephenson to apply for other vacant positions within the company.  (Doc. 25-11 at 2; Doc. 25-2 at 120-138.)  In rebuttal, Stephenson presents her deposition and affidavit testimony that the positions paid less than half of her current salary and were undesirable because they would "pigeonhole" her into sitting at a desk all day.  (Doc. 25-2 at 124, 136; Doc. 36-1 at ¶¶ 48-49.) She acknowledges that "[w]hile there were plenty of job openings at Pfizer around the country, there were no comparable positions which did not require relocation, which we were not in a position to do."  (Doc. 36-1 at ¶ 58; accord Doc. 25-2 at 137.)

---

[3] Stephenson does not contend that Pfizer had any duty to create a new position for her.  (Doc. 40 at 17-18.)

Ultimately, Stephenson decided not to apply for a local position because she did not find any to be commensurate with her skills or experience. (Doc. 25-2 at 127–28; Doc. 36-1 at ¶¶ 48-49.) This may be true, but as a result her claim of refusal to make a reasonable accommodation necessarily fails because she has failed to produce any evidence of a vacant position at Pfizer she was willing to accept. She has eschewed the available options in favor of her argument that Pfizer must hire a driver or provide transportation for her. Her desire to maximize her skills and income is admirable, but the ADA does not oblige Pfizer to accommodate Stephenson in either of these ways. Therefore, Stephenson has failed to meet her burden of showing an accommodation that was reasonable on its face, and Pfizer's motion for summary judgment will be granted.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that the Defendant's motion for summary judgment (Doc. 24) be GRANTED.


                                        /s/    Thomas D. Schroeder
                                    United States District Judge

September 8, 2014


19